IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TONICA BOSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-3166 |
| | ) | |
| MEMORIAL MEDICAL CENTER, | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant Memorial Medical Center's Motion for Summary Judgment as to Counts V and VII of Plaintiff's Amended Complaint (d/e 43) (Motion for Summary Judgment). For the reasons stated below, the Motion for Summary Judgment is allowed.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"

1

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broad. Co., 744 F.2d 604, 607 (7th Cir. 1984).  Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  McKenzie v. Ill. Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex, 477 U.S. at 322).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts.  See Matsushita Elec. Indus. Co., 475 U.S. at 586.  Instead, she must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  Id. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. Finally, "[a]lthough [the court] must, for purposes of summary judgment review, draw any inferences from the record in favor of the plaintiff, [it is] not required to draw every conceivable inference from the record. [It] need draw only reasonable ones." See Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995) (internal quotation marks omitted). The facts below are taken from the parties' summary judgment briefing and supporting evidence.

## FACTS

This case involves an employee's claims that her employer failed to accommodate a disability as required by the Americans with Disabilities Act (ADA). Plaintiff Tonicia Boston is a registered nurse (RN) who worked for Defendant Memorial Medical Center (MMC) from March 1999 through June 2005. On September 14, 2004, Boston injured her back on the job and submitted a Report of Injury to MMC's Employee Health Department. At the direction of MMC's Worker's Compensation Coordinator, Linda Eilering, Boston then reported to the Midwest Occupational Health Associates office for an examination by Dr. Jeffrey Brower. Dr. Brower diagnosed a strain in Boston's lumbar area and directed her not to lift more

3

than 20 pounds and not to engage in repetitive waist bending. An MRI scan eventually revealed that Boston had a small left paracentral disc herniation, over which her spinal cord was slightly draped kyphotic. The MRI also showed a mild diffuse disc bulge in another spot.

Boston found that her back pain made personal care and household chores difficult. Occasionally she needed assistance to bathe, and her mother often had to prepare her meals for her and wash her dishes. Boston also could shop for groceries only rarely.

Because of her condition, MMC required Boston to undergo an examination at its Industrial Rehab Department to determine whether she was fit to continue her work as an RN. At this examination, Boston complained that she experienced lower back pain when she lifted weighted objects from the floor to her waist, when she carried a milkcart containing various weights, when she bent over, and when she moved a patient from a wheelchair to a chair. On December 6, 2004, the physical therapist who conducted Boston's examination reported that Boston was not physically able to complete the demands of her position. Specifically, he reported that Boston could not complete patient transfers. Were she to continue in her present position, he found, she would present a safety risk to patients and

to herself.

After the physical therapist issued his report, Boston applied for an internal MMC transfer. She asked to switch from work as a staff nurse to a position as a clinical case manager. To help with insurance administration, a clinical case manager assesses patients to determine their likely length of stay, their discharge date, and their diagnosis. Clinical case managers also take calls from other hospitals or units within MMC to place patients in appropriate units and beds.

MMC approved Boston's request for a transfer, and on January 31, 2005, Boston started work as a clinical case manager. Boston informed her supervisor, Julie Meyer, that sitting for long hours aggravated her back condition. She eventually provided MMC physician notes, dated April 17, 2005, and April 29, 2005, stating that she should avoid prolonged sitting and should walk or move for five minutes every hour or two. Boston gave the first of these notes to Meyer and the second to Jodi Sanchez, who worked with MMC's worker's compensation unit. On both notes, Sanchez wrote "ok." <u>Motion for Summary Judgment</u>, Proposed Undisputed Fact Nos. 22 & 23; <u>Plaintiff's Response to Motion for Summary Judgment (d/e 46) (Response)</u>, at 2 (failing to dispute the statement in Proposed Fact No.

22 and 23 that Sanchez wrote on each note).

When Boston received her orientation for this position, she had to follow a co-worker, which involved a lot of sitting. While working, however, Boston "gave a good effort" at following her doctor's orders to move or walk every hour or two.[1]  Motion for Summary Judgment, Exhibit B, Boston Deposition, at 48. Every four hours she took a smoking break, and the MMC smoking area was a five- to seven-minute walk and an elevator ride from her work station. Boston also took a 30-minute meal break each day, and the MMC cafeteria also was a five- to seven-minute walk and an elevator ride from her work station. Additionally, three or four times a day Boston would move about her office to operate a fax machine, and she also attended a daily bed placement meeting on another floor. MMC never

---

[1]In its Motion for Summary Judgment, MMC included the proposed undisputed fact, "Boston made a 'good effort' to abide by her physician's instructions to stand and walk about every one to two hours." Motion for Summary Judgment, Proposed Undisputed Fact No. 24. It relied on Boston's deposition testimony to support this statement, and her testimony does in fact support it. See Motion for Summary Judgment, Exhibit B, Boston Deposition, at 48. Boston disputed MMC's proposed fact in her Response, but in support of her dispute, she cites an interrogatory response that states only, "Plaintiff was told that during orientation process Plaintiff had to learn as much as she cold [sic] and that Plaintiff had to follow Kelly Fuller at that time which involved a lot of sitting." Motion for Summary Judgment, Exhibit D, Plaintiff's Answers to Defendant's Interrogatories, Interrogatory 10, at 19. This evidence does not contradict MMC's evidence that Boston made a good effort to comply with her doctor's orders regarding moving every hour or two. Therefore, it is undisputed that Boston made this an effort.

6

disciplined Boston for abiding by her doctor's orders to stand and move about every hour or two.

Boston also took time off work while she was a clinical case manager. On Friday March 25, 2005, she emailed Meyer to request four hours off the next day and proposed making up that work on the following Monday. About an hour later, Meyer informed Boston that she would have to use her vacation or sick time if she could not work. She sent Boston the following reply:

> Monday is a new pay period. You need to work the days you are scheduled unless you are ill. You are being paid 80 hours to work 6 - 12 hour days. Therefore if you need to take time off you need to request pto time. Following Kathy and Denise is not an option. You are not functioning in their job role and you have already completed 2 months of orientation. If you would like to discuss either call me or come down to the office.

<u>Motion for Summary Judgment</u>, Exhibit E, <u>Plaintiff's Rule 26(a)(1) Disclosures and Meyer Email Reply</u>, at 9. Boston was scheduled for a 12-hour shift on Saturday, March 26, 2005, and she took eight hours of accrued vacation time and four hours of sick time instead of working that day. Because of back pain and doctor's appointments, Boston also took time off on May 27, 2005; May 30, 2005; June 2, 2005; and June 8, 2005. MMC approved all of these absences and did not discipline Boston for any

7

of them. Boston offers inconsistent evidence on whether she was disciplined for her May 26, 2005, absence. She neglects to dispute MMC's Proposed Statement of Undisputed Fact No. 35, which states that she received no discipline for her absence on May 26, 2005. <u>Motion for Summary Judgment</u>, Proposed Statement of Undisputed Fact No. 35, at 6. Yet, in her Response, she offers the additional statement of fact: "Boston was disciplined for calling off sick on March 26, 2005." <u>Response</u>, Proposed Statement of Undisputed Fact No. 1, at 3. In support, she cites an MMC Record of Corrective Action consisting of a first written warning for failing to notify her supervisor before March 30, 2005, that she had called in sick on March 26, 2005. <u>Motion for Summary Judgment</u>, Attachment 3, at 41. A jury could consider this written warning to be discipline for her March 26, 2005, absence. Reading Boston's inconsistent positions in the light most favorable to her, the Court finds that an issue of fact exists regarding whether Boston was disciplined for missing work that day. In June of 2005, Boston resigned from her work at MMC.

Boston subsequently filed suit against MMC. Two counts of her Amended Complaint remain. In Count V, Boston alleges that MMC failed to accommodate an ADA-qualified disability. Specifically, she contends

8

that MMC failed to allow her to take periodic breaks from sitting and disciplined her for her March 26, 2005, absence. In Count VII, Boston also alleges that MMC retaliated against her for opposing racial discrimination. MMC has moved for summary judgment on both counts. Boston concedes that MMC is entitled to judgment on Count VII, so the Court does not analyze this count. Boston contends that summary judgment is not appropriate on Count V, however, and the Court addresses it below.

## ANALYSIS

MMC is entitled to summary judgment on Count V. Boston has not established that she is disabled for ADA purposes or that, if she were disabled, MMC failed to accommodate her disability. Therefore, she cannot succeed on a failure to accommodate claim.

Under the ADA, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). There are three types of qualifying disabilities a plaintiff may suffer to qualify for protection under the ADA. 42 U.S.C. § 12102(1). Boston claims that she suffers from the first: "a

physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Specifically, Boston argues that she is limited in the major life activities of "caring for oneself" and "performing manual tasks." 29 C.F.R. § 1630.2(I). Regarding her limitations in caring for herself, she points to her testimony that occasionally she needed assistance to bathe, that her mother often had to prepare her meals for her and wash her dishes, and that she could shop for groceries only rarely. Yet, the Seventh Circuit has held that nearly identical limitations failed to rise to the level of an ADA disability. In <u>Squibb v. Memorial Medical Center</u>, the court held that an individual whose back pain "limited . . . her ability to do household tasks such as cooking, cleaning and grocery shopping," to the point where she could perform these tasks only "on occasion," was not disabled under the ADA. <u>Squibb</u>, 497 F.3d 775, 784 (7th Cir. 2007). Boston's situation is indistinguishable; her personal care limitations are not disabling under the ADA.

Moreover, even if her limitations in caring for herself did qualify as an ADA disability, Boston has not shown that MMC failed to accommodate that disability. "[T]o the extent an ADA discrimination claim centers on a

10

request for a workplace accommodation, there must be some causal connection between the major life activity that is limited and the accommodation sought." Id. at 785. Boston presented evidence of requests to accommodate her inability to lift objects or to sit for long periods of time, but she fails to show how these requested accommodations relate to her alleged inability to care for herself. She has shown no causal connection between these requested accommodations and her occasional inability to bathe, prepare her meals, wash her dishes, and shop for groceries. Thus, even if Boston were disabled for ADA purposes in her ability to care for herself, she has not shown that MMC failed to accommodate this disability.

Boston also claims that her limited ability to perform manual tasks is disabling. She offers no analysis of this alleged disability, but the only manual tasks she has shown she cannot perform involve lifting objects.[2] Yet, the Seventh Circuit has suggested that even an inability to lift 10 pounds does not disable an individual for ADA purposes. Mays v. Principi, 301 F.3d 866, 869-70 (7th Cir. 2002); Squibb, 497 F.3d at 782. Based on the evidence before the Court, Boston's limitation is no more severe, and

---

[2]Sitting and standing are not manual tasks. Nuzum v. Ozark Automotive Distributors, Inc., 432 F.3d 839, 845 (8th Cir. 2005).

11

therefore does not make her disabled under the ADA. Moreover, even if her inability to lift certain objects did qualify as an ADA disability, she offers no evidence that MMC failed to accommodate this disability. Indeed, MMC placed her in a new position that apparently required no substantial lifting.

MMC is entitled to summary judgment on Count V. Further, as Boston concedes, MMC also is entitled to summary judgment on Count VII.

THEREFORE, Defendant Memorial Medical Center's Motion for Summary Judgment as to Counts V and VII of Plaintiff's Amended Complaint (d/e 43) is ALLOWED. Judgment is entered in favor of Memorial Medical Center and against Tonicia Boston on Count V and Count VII, the only remaining claims. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   August 24, 2009

    FOR THE COURT:

                                s/ Jeanne E. Scott
                                JEANNE E. SCOTT
                UNITED STATES DISTRICT JUDGE